UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CRIMINAL ACTION NO. 13-35-DLB-CJS-1**

**UNITED STATES OF AMERICA**　　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**v.**　　　　　　　　**MEMORANDUM OPINION AND ORDER**

**JIMMY JAMES JONES**　　　　　　　　　　　　　　　　　　　　　　　**DEFENDANT**

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on two *pro se* Motions to Dismiss filed by Defendant Jimmy James Jones (Docs. # 225 and 227). The United States has filed Responses (Docs. # 226 and 230), and Jones has filed Replies (Docs. # 231 and 232). Therefore, the Motions are now ripe for review. For the reasons stated below, each Motion will be **denied**.

**I.　FACTUAL AND PROCEDURAL BACKGROUND**

On June 13, 2013, a federal grand jury in Covington, Kentucky indicted Jones on eight counts relating to the distribution of heroin and being a felon in possession of a firearm. (Doc. # 1). Jones was arrested on October 23, 2013, and his initial appearance and arraignment was held that same day. (*See* Docs. # 14 and 15).

After a three-day trial in June 2014, a jury found Jones guilty of conspiracy to distribute heroin, distribution of heroin, and aiding and abetting the same. (*See* Docs. # 93, 94, 95, and 99). Jones was later sentenced by then U.S. District Judge Amul Thapar to a 78-month term of imprisonment to be followed by a lifetime term of supervised release. (Doc. # 147 at 2-3).

On March 26, 2015, Jones filed a Notice of Appeal with the Sixth Circuit seeking review of his sentence. (Doc. # 148). On July 14, 2016, the Sixth Circuit issued an opinion affirming Jones's sentence. *United States v. Jones*, 829 F.3d 476, 478 (6th Cir. 2016). Jones then filed a petition for writ of certiorari with the United States Supreme Court which was denied on January 9, 2017. (Doc. # 172). Jones thereafter completed his term of imprisonment and commenced his term of supervised release on June 14, 2018.

On November 6, 2020, the United States Probation Office submitted a Petition for Warrant or Summons for Offender Under Supervision alleging that Jones had violated the terms of his supervised release. (Doc. # 196). The accompanying violation report was dated November 3, 2020, and alleged that Jones had committed four supervised release violations. (Doc. # 210). An initial appearance on the alleged supervised release violations was scheduled for November 23, 2020 before Magistrate Judge Candace J. Smith. (*See* Doc. # 202). After Jones failed to appear for the initial appearance, the United States made an oral motion for the issuance of an arrest warrant which Judge Smith granted. (*See* Doc. # 203).

Jones was arrested on June 15, 2023, and his initial appearance on the alleged supervised release violations was held that same day before Judge Smith. (Docs. # 207 and 208). At his initial appearance, Jones requested a preliminary hearing which was held on June 20, 2023. (*See* Doc. # 208). After hearing testimony from Jennifer Huber, Jones's probation officer, Judge Smith found probable cause for the four supervised release violations in the November 3, 2020 violation report. (Doc. # 211).

On June 23, 2023, the Probation Office issued a second violation report that contained five additional alleged supervised release violations. (Doc. # 218). Jones appeared for an initial appearance on these alleged violations on July 11, 2023. (*See* Doc. # 219). On August 29, 2023, Judge Smith held another preliminary hearing where she heard testimony from Ms. Huber as well as Jarod Pugh and Zach Thompson, two Deputy U.S. Marshals called by Jones. (*See* Doc. # 228). At the close of the hearing, Judge Smith found probable cause for the five supervised release violations in the June 23, 2020 violation report. (*See id.*).

On August 16, 2023 and August 25, 2023, respectively, Jones filed his first pro se Motion to Dismiss and his second pro se Motion to Dismiss. (Docs. # 225 and 227). Jones moves to dismiss the alleged supervised release violations pending against him. (*See id.*). The United States has filed Responses (Docs. # 226 and 230), Jones has filed Replies (Docs. # 231 and 232), and the Motions are now ripe for review.

**II.     ANALYSIS**

Because Jones is proceeding *pro se*, the Court is required to liberally construe the Motions. *See United States v. Houston*, 792 F.3d 663, 667 (6th Cir. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). Although Jones never states as much, the Court understands the first and second Motions to Dismiss to be respectively directed at the supervised release allegations in the November 3, 2020 and June 23, 2023 violation reports. Because both Motions present substantially similar arguments, the Court will address them together. The Court will first address the procedural propriety of the Motions before turning to their merits.

### A. Jones's Motions are Procedurally Defective

Although Jones never identifies the procedural vehicle through which he brings the Motions, the Court notes that they could conceivably be brought under Rule 12 or Rule 32.1 of the Federal Rules of Criminal Procedure. Under either of these rules, however, the Motions are procedurally defective.

Rule 12 governs the submission of criminal pleadings and pretrial motions. The timeframe for submitting a motion under Rule 12 depends upon the nature of the motion. Fed. R. Crim. P. 12. "A motion that the court lacks jurisdiction may be made at any time *while the case is pending*." *Id*. § (b)(2) (emphasis added). All other Rule 12 motions must be made before trial. *Id*. § (b)(3). Because Jones's supervised release could only be imposed after he was convicted at trial, the Motions could not have been properly brought under Rule 12(b)(3). Moreover, this case is no longer "pending," as a final judgment has been entered and Jones's direct appeal was adjudicated well before he filed the instant Motions. *See United States v. O'Connor*, No. 21-3506, 2022 WL 2037602, at *1 (6th Cir. Mar. 16, 2022) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987)). Thus, to the extent the Motions are brought under Rule 12(b)(2), they are untimely and may properly be dismissed. *See United States v. Garza*, Case Number 14-20117, 2016 WL 1594375, at *2-3 (E.D. Mich. Apr. 21, 2016).

Apart from Rule 12, Jones could have intended to invoke Rule 32.1. This rule sets forth the procedure for revoking or modifying a term of probation or supervised release. Fed. R. Crim. P. 32.1. When a person, like Jones, is in custody for an alleged violation of his or her supervised release, a magistrate judge must promptly conduct a preliminary hearing "to determine whether there is probable cause to believe that a violation

4

occurred," unless the hearing is waived. *Id*. § (b)(1)(A). If the magistrate judge finds probable cause for the violation, then the judge "must conduct a revocation hearing," but if no probable cause is found, then the judge "must dismiss the proceeding." *Id*. § (b)(1)(C). Here, Judge Smith has already found probable cause for the alleged violations, thus requiring the Court to hold a revocation hearing. (*See* Docs. # 211 and 228). To the extent Jones brings the Motions under Rule 32.1, he does not explain how the Court could dismiss the alleged violations at this stage and in these circumstances. Moreover, nowhere does Rule 32.1 expressly authorize the filing of motions to dismiss alleged supervised release violations.

Liberally construed, the Motions might be read as challenging whether the Court complied with Rule 32.1. Indeed, Jones appears to challenge Judge Smith's probable cause determination insofar as it was based on Ms. Huber's "hearsay" testimony. (*See* Doc. # 231 at 2). However, "neither the Confrontation Clause nor the Federal Rules of Evidence apply in supervised release revocation hearings, permitting the use of hearsay evidence as long as it is reliable." *United States v. Kokoski*, 435 F. App'x 472, 474 (6th Cir. 2011) (internal citations omitted). And "[h]earsay given under oath, replete with detail, or supported by corroborating evidence has been recognized as reliable." *Id*. *See also* Federal Rule of Evidence 1101(d)(3) (the Federal Rules of Evidence do not apply to proceedings relating to the revocation of supervised release). Ms. Huber testified under oath at the preliminary hearings, and Jones offers no reason for the Court to doubt the reliability of her testimony other than by labelling it "hearsay."

Based on the above, the Court concludes that the Motions are procedurally defective and are thus **denied**.

### B.    Jones's Motions Separately Fail on the Merits

Even if the Motions are not procedurally defective, they separately fail on the merits.  As an initial matter, the Court notes that Jones spends a considerable amount of the Motions and Replies citing theories advanced by "sovereign citizens."  "Sovereign citizens . . . are a 'loosely knit network' of individuals who express—and act on—a shared anti-government sentiment."  *United States v. Cook*, No. 3:18-CR-00019, 2019 WL 2721305, at *1 (E.D. Tenn. June 28, 2019) (quoting Joshua P. Weir, *Sovereign Citizens: A Reasoned Response to the Madness*, 19 LEWIS & CLARK L. REV. 830, 834 (2015)).  As explained by the United States District Court for the Eastern District of Tennessee,

> [s]overeigns believe there are two forms of citizenship—inferior federal (or Fourteenth Amendment) citizenship, and superior state (also known as sovereign, or "de jure") citizenship.  They further believe the original Constitution recognized three types of jurisdiction—common law (which requires an injury to person or property), equity (which requires a contract), and admiralty (originally limited to the high seas).  Sovereigns argue that federal district courts are admiralty courts, and through the [Uniform Commercial Code], federal courts have superseded common law by enforcing federal government contracts that bind people into federal citizenship.  By filing abstruse legal documents to free themselves from the yoke of federal citizenship, sovereigns argue they are exempt from the jurisdiction of any legitimate court, state of federal.

*Cook*, 2019 WL 2721305, at *1 (internal citations omitted).  Jones's filings are replete with references to the above theories, as well as related arguments concerning his lack of consent to the Court's jurisdiction and the alleged unconstitutionality of all rules and statutes as applied to individuals.  (*See* Docs. # 225, 227, 231, and 232).

"Courts have repeatedly rejected, as frivolous, arguments based on the theory of sovereign citizenship."  *In re Mooreese El*, No. 3:21-mc-3-BJB, 2021 WL 4594666, at *1 (W.D. Ky. Oct. 6, 2021) (collecting cases).  Indeed, courts routinely reject such arguments "without extended argument as patently frivolous."  *Powell v. Michigan*, Case No. 22-

6

10816, 2023 WL 2154954, at *2 (E.D. Mich. Jan. 24, 2023) (quoting *Adkins v. Kentucky*, No. 3:18-MC-26, 2018 WL 6528462, at *2 (W.D. Ky. Dec. 12, 2018)). Thus, to the extent Jones's arguments are based on sovereign citizen theories, they will be rejected as frivolous.

Apart from referencing sovereign citizen theories, Jones makes four other arguments for the dismissal of the alleged supervised release violations. None of these arguments have merit. First, Jones challenges the lack of an indictment charging him with the violations, claiming that without an indictment his Fifth Amendment rights are being violated. (Doc. # 225 at 6; Doc. # 231 at 3). However, "supervised-release-revocation proceedings do not require an indictment[.]" *United States v. Johnson*, 356 F. App'x 785, 791 (6th Cir. 2009). Second, Jones appears to challenge his underlying conviction and sentence, arguing that he "was over charged and over sentenced in the criminal action." (Doc. # 231 at 1). As the Sixth Circuit has noted, however, the proper place to challenge an original conviction or sentence "is on *collateral* attack, not at a supervised release revocation hearing." *United States v. Patrick*, No. 21-5198, 2021 WL 5815646, at *2 (6th Cir. Sept. 9, 2021) (quoting *United States v. Hill*, 776 F. App'x 908, 909 (6th Cir. 2019)) (emphasis original). Third, Jones appears to challenge the supervised release violations that are based on his use of marijuana, noting that he possessed a medical marijuana card issued by the Ohio Medical Marijuana Registry. (Doc. # 231 at 4-3; Doc. # 221-1). But whether Jones could legally possess or consume marijuana under Ohio law is irrelevant, as any use of marijuana remains federally illegal. 21 U.S.C. §§ 841-863. Finally, Jones appears to challenge the constitutionality of the federal supervised release regime. (*See* Doc. # 227). However, as noted by the Sixth

Circuit, "the supervised-release regime remains constitutional." *Johnson*, 356 F. App'x at 792.

### III.   CONCLUSION

Jones has stated no meritorious argument for the dismissal of the alleged supervised release violations pending against him. Accordingly,

**IT IS ORDERED** that:

(1) Jones's first *pro se* Motion to Dismiss (Doc. # 225) is **DENIED**;

(2) Jones's second *pro se* Motion to Dismiss (Doc. # 227) is **DENIED**; and

(3) This matter is set for a **Final Supervised Release Revocation Hearing** on **October 31, 2023 at 10:00 a.m. in Covington, Kentucky**.

This 24th day of October, 2023.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\Covington Criminal\2013\13-35-1 MOO re MTDs.docx